AO 91 (Rev. 11/82)   **CRIMINAL COMPLAINT**   ORIGINAL

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

FILED
CLERK, U.S. DISTRICT COURT

FEB 2 2 2017

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>DANIEL PADILLA | **DOCKET NO.**<br><br>**MAGISTRATE'S CASE NO.**<br>17MJ00387 |

| Complaint for violation of Title 18, United States Code, Section 1708 |
|---|

| NAME OF MAGISTRATE JUDGE<br>HONORABLE CHARLES F. EICK | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>August 2, 2016 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1708]

On or about August 2, 2016, in Los Angeles County, within the Central District of California, defendant DANIEL PADILLA ("PADILLA") unlawfully possessed mail matter that had been stolen and taken from the United States mail, namely, approximately 13 pieces of mail and mail matter addressed to various individuals, both within Los Angeles County and elsewhere, and at that time and place defendant PADILLA knew that said mail matter was stolen.

LODGED
2017 FEB 22 PM 12:00
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES
BY:

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:   N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**JAMES WALSH**      *James Walsh* |
|---|---|
| | OFFICIAL TITLE<br>Postal Inspector - USPIS |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1] | DATE<br>February 22, 2017 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Victoria A. Degtyareva x17635   VAD  REC: Detention

## AFFIDAVIT

I, James Walsh, being duly sworn, declare and state as follows:

### I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrant against DANIEL PADILLA ("PADILLA") for a violation of Title 18, United States Code, Section 1708 (Possession of Stolen Mail).

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II.   BACKGROUND FOR POSTAL INSPECTOR JAMES WALSH

3.   I am a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since April 2003.  I am currently assigned to the Los Angeles Division, Mail Theft Team located in Long Beach, California. The Mail Theft Team investigates postal-related crimes, including theft of United States mail ("U.S. mail"), fraud, and related activity in connection with access devices that include credit cards and debit cards, identity theft, and unauthorized

1

use of other persons' information for financial gain.  The Mail Theft Team also investigates crimes related to the use, theft, or counterfeiting of postal keys (referred to as "arrow keys") and locks.

4.    I have completed a 12-week basic training course in Potomac, Maryland, which included training in the investigation of mail theft, identity theft, and crimes against postal property.  During my employment, I have investigated crimes involving mail theft, bank fraud, identity theft, credit card fraud, and mail fraud.  I have interviewed suspects, victims, and witnesses regarding mail theft, bank fraud, identity theft, and mail fraud.  Based on my own mail theft investigations and discussions with other Postal Inspectors, I have learned about mail theft investigations and common mail theft and identity theft practices.  Prior to being assigned to the Mail Theft Team, I was assigned to the Postal Inspection Service Identity Theft/Economic Crimes Task Force in Los Angeles, California where my duties included investigating identity theft and credit card fraud.  I also have prior assignments with the Dangerous Mail Investigations Team, and the Federal Bureau of Investigation Joint Terrorism Task Force.

### III. SUMMARY OF PROBABLE CAUSE

5.    On or about August 2, 2016, during an investigation into counterfeit currency, Redondo Beach Police Department ("RBPD") detectives located DANIEL PADILLA near the Best Western Plus South Bay Hotel in Lawndale, California.  After PADILLA

2

rammed his car into one of the police vehicles, RBPD officers searched PADILLA's car pursuant to a state search warrant. During the search, the officers found an unregistered gun, approximately 109 credit and debit cards, 35 driver's licenses and other identifications, 9 social security cards, approximately 51 checks, approximately 33 profiles with other people's personal identifying information, one United States Passport, and approximately 13 pieces of mail matter, all of which were not in PADILLAS's name.

## IV.    STATEMENT OF PROBABLE CAUSE

6.    On or about August 15, 2016, I met with RBPD Sergeant Michael Strosnider.  Based on my conversation with Sergeant Strosnider, as well as my review of investigative reports prepared by law enforcement officers who were involved in this investigation, I know the following:

### A.    Beginning of Investigation

a.    On or about July 21, 2016, while Redondo Beach Police detectives were conducting an investigation at the Manor Motel in the city of Hawthorne, California, they detained an individual for possession of counterfeit currency.  During the investigation, a vehicle entered the driveway to the hotel and honked the horn for the detained subject.  Detectives attempted to contact the driver of the vehicle, but the vehicle fled the scene at a high rate of speed, nearly striking one of the detectives in the process.  Sergeant Strosnider recognized the

3

driver as PADILLA.  The individual who was detained by police at the motel also confirmed that the driver was PADILLA.

b.   On July 27, 2017, the Honorable Judge Steven Van Sicklen of the Superior Court of California, County of Los Angeles, issued an order authorizing the disclosure of Global Positioning System ("GPS") cell-site information for PADILLA's cell phone.  Using the cell-site information, RBPD detectives were able to determine the approximate location of PADILLA's phone.

**B.   August 2, 2016 Arrest and Search of PADILLA's Car**

c.   On or about August 2, 2016, Sergeant Strosnider received information from a confidential source ("CS") that PADILLA was driving a black GMC Yukon and using room 227 at the Best Western Plus South Bay Hotel in Lawndale, California to make counterfeit bills.  Cell-site information also showed that PADILLA's cell phone was in the area of the hotel.  Based upon the cell-site information and the information provided by the CS, RBPD officers searched the area around the hotel, where they saw PADILLA driving the GMC Yukon.  PADILLA rammed his car into one of the police vehicles, injuring one officer.  An officer involved shooting occurred, and PADILLA and the injured officer were transported to hospitals for medical treatment.

d.   RBPD officers discovered that the GMC Yukon was a rental vehicle.  RBPD Detective Sapien contacted the individual whose name was used to rent the vehicle, and she told him that she was a victim of identity theft

4

e.   On or about August 2, 2016, the Honorable Judge Allan B. Honeycutt of the Superior Court of California, County of Los Angeles, approved a search warrant application for the search of PADILLA's GMC Yukon and for room 227 at the Best Western Plus South Bay Hotel.

f.   Later that day, officers conducted a search of the Yukon, and recovered the following items, none of which were in PADILLA's name:

i.   Approximately 109 debit/credit cards;

ii.   Approximately 35 driver's licenses and other identifications, and 2 photocopies of identifications;

iii.  Approximately 9 social security cards;

iv.   Approximately 51 checks;

v.   Approximately 33 profiles with people's personal identifying information;

vi.   Approximately 4 Medicare cards;

vii.  One passport;

viii.   Approximately 13 pieces of mail;

ix.   One counterfeit postal arrow key;

x.   One unregistered, loaded handgun.

## C.   Mail Theft Reports

g.   On August 2, 2016, K.L., a resident on the 500 block of South Maria Avenue in Redondo Beach, California filed a report with RBPD regarding a break-in into the community mailboxes.  Mail from the 500 block of South Maria Avenue was found in PADILLA's car on that same day.

5

h.   On August 2, 2016, C.D., a resident at 1415 Stanford Avenue, Redondo Beach, California, filed a police report with RBPD regarding someone stealing mail from the panel of mailboxes at C.D.'s apartment complex.  C.D.'s apartment is located near the mailboxes; and C.D. heard noises that sounded like someone opening the boxes at approximately 5:40 a.m.  When C.D. went to investigate, C.D. reported seeing some mail on the ground leading to the street and a black American-made SUV (possibly a GMC Yukon or Chevy Tahoe) quickly leaving, but C.D. did not see the driver.  C.D.'s description of the car was consistent with the black GMC Yukon that PADILLA was driving when he was stopped by RBPD officers later that morning, and mail from 1415 Stanford Avenue was found in PADILLA's car.

D.   **Victim Interviews**

7.   On September 12, 2016, I interviewed G.C. regarding her identification card, social security card, mail, credit cards, and personal profile information found in PADILLA's vehicle.  G.C. told me the following:

a.   On or about July 16, 2016, her purse was stolen; and it contained her identification card, social security card, and credit cards.

b.   The automated teller machine ("ATM") withdrawal transactions from her bank account that occurred after July 16, 2016 were not conducted by her.

c.   The blank checks recovered in her name and other checks made payable to her did not belong to her.

6

d.    She did not know PADILLA and did not authorize PADILLA to have possession of her personal belongings or personal information.

8.    On September 12, 2016, I interviewed R.G. regarding mail and a credit card in his name recovered from PADILLA's car. R.G. told me the following:

a.    He never received the Costco credit card that he ordered.

b.    He did not know PADILLA and did not authorize PADILLA to have possession of his mail.

9.    On September 12, 2016, I interviewed G.S. regarding a check in her name made payable to the homeowner's association recovered from PADILLA's car.  G.S. told me the following:

a.    She was notified that the check was never received by the homeowner's association even though the bank had issued it.

b.    She did not know PADILLA and did not authorize PADILLA to have possession of her check.

10.    On September 13, 2016, I interviewed J.V.R. regarding mail in his wife's name with their address recovered from PADILLA's car.  J.V.R. told me the following:

a.    J.V.R. never received a shipment that he ordered even though United States Postal Service tracking information showed it was delivered to his address.

b.    J.V.R. did not know PADILLA and did not authorize PADILLA to have possession of his mail.

7

11. On September 14, 2016, I interviewed R.S. regarding identifications and credit cards in his name recovered from PADILLA's car. R.S. told me the following:

a. His car was broken into in July 2016, and his wallet was stolen.

b. The identifications and credit cards recovered from PADILLA's car belonged to him.

c. He did not know PADILLA and did not authorize PADILLA to have possession of his personal belongings.

12. On September 16, 2016, I interviewed G.K. regarding his California driver's license, Medicare insurance card (which has his social security number printed on it), credit cards, and credit report found in PADILLA's car. G.K. told me the following:

a. The identifications and credit cards belonged to him, except the Curacao credit card, which someone opened in his name.

b. He did not request a copy of his credit report, so someone else must have made that request.

c. He did not know PADILLA and did not authorize PADILLA to have possession of his personal belongings or personal information.

13. On September 16, 2016, I interviewed M.R. regarding mail with his name and his wife's name and address recovered from PADILLA's car. M.R. stated that he did not know PADILLA and did not authorize PADILLA to have possession of their mail.

8

14.   On September 20, 2016, I interviewed J.N. regarding mail in his name and address recovered from PADILLA's vehicle. J.N. told me the following:

a.   He never received the American Express credit card that he ordered.

b.   He did not know PADILLA and did not authorize PADILLA to have possession of his mail.

15.   On September 28, 2016, I interviewed P.S. regarding her driver's license, credit card, mail, and personal identifying information recovered from PADILLA's vehicle.  P.S. told me the following:

a.   Her vehicle was burglarized in May 2016, and her driver's license and credit card were stolen at that time.

b.   She was not familiar with the mail matter in her name addressed to an Inglewood, California address because she has never lived at that address.

c.   She did not know PADILLA and did not authorize PADILLA to have possession of her personal belongings or personal information.

//

//

//

//

//

//

//

9

## V.   CONCLUSION

16.   Based on the foregoing, there is probable cause to believe that DANIEL PADILLA violated Title 18, United States Code, Section 1708 (Possession of Stolen Mail).

_____
James Walsh
Postal Inspector
United States Postal Inspection
Service


Subscribed to and sworn before
me this 22nd day of February,
2017.

_____
HONORABLE CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

10